UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

| | |
|---|---|
| JESSE R. REDMOND, JR., | |
| Petitioner, | Civil Action No. 15-141-KKC |
| V. | |
| J. C. HOLLAND, Warden, | **MEMORANDUM OPINION AND ORDER** |
| Respondent. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Jesse R. Redmond, Jr., is an inmate confined at the United States Penitentiary - McCreary in Pine Knot, Kentucky. Through counsel, Redmond has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge the August 8, 2014, decision of the United States Parole Commission (the "Commission") to deny him parole from his indeterminate sentence of 15 years to life imprisonment. As grounds for relief, Redmond contends that the Commission's decision to depart from the 1987 parole guidelines to deny parole was arbitrary and capricious because it was predicated upon Redmond's failure to utilize rehabilitative programming that was not available at the prisons where he was incarcerated, was based upon a misunderstanding of his underlying offense conduct, and was unsupported by any evidence of record. [R. 1]

Having thoroughly reviewed the petition and its supporting materials, as well as the Commission's Notice of Action, the Court concludes that the Commission's decision satisfies the highly deferential standard of review accorded to parole determinations, and must deny the petition for the grounds set forth more fully below.

1

## BACKGROUND

On February 8, 1996, Redmond was charged in the District of Columbia with three counts of first degree sexual abuse. Redmond stood accused of raping a 70-year-old woman who lived nearby in his neighborhood and who was a friend of his mother. *Redmond v. United States*, 829 A. 2d 229, 230-31 (D.C. 2003). Following trial, on July 22, 1996 a jury convicted Redmond on one count of first degree sexual abuse for vaginal rape, but acquitted him on the remaining counts for oral and anal sodomy. [R. 1-6 at 9-10] On December 5, 1996, the District of Columbia Superior Court sentenced Redmond to an indeterminate term of fifteen years to life imprisonment. [R. 1-6 at 23]

Redmond's conviction was affirmed on direct appeal over his challenges to the in- and out-of-court identification of his person as the perpetrator. *Redmond*, 829 A. 2d at 232-36. Redmond has sought collateral relief from his conviction pursuant to D. C. Code § 23-110 and 28 U.S.C. § 2241, albeit without success. *Redmond v. Smith*, No. 3:05-CV-0760, 2006 WL 2583650, at *3, 5-7 (M.D. Penn. Sept. 7, 2006). Nonetheless, Redmond has consistently maintained his innocence, and has sought relief from his conviction on that ground in the trial court. [R. 1-6 at 25-45] While the Superior Court initially denied his motion, it has vacated that order as prematurely decided on procedural grounds, and Redmond's motion remains pending as of this writing.

After Redmond had served the fifteen-year minimum portion of his sentence, an initial parole consideration hearing was held on July 27, 2010. In its decision, the Commission determined that Redmond had a Total Point Score ("TPS") of two, which standing alone "indicate[d] that parole should be granted" at that time. However, in its August 12, 2010, Notice of Action, the Commission concluded that a departure from the Guidelines was warranted because "there is a reasonable probability that you would not obey the law if

released and your release would endanger the public safety." That conclusion was based upon Redmond's offense conduct and the fact that he had not completed programming in anger management or courses designed for sex offenders. The Commission set Redmond's next parole hearing for July 2011. [R. 1-7 at 7] The Commission's decision could not formally be appealed to the National Appeals Board. 28 C.F.R. § 2.80(o)(6). Through counsel, Redmond sought informal reconsideration of the denial in February 2011, highlighting his significant efforts at rehabilitation while in prison, but his request was denied. [R. 1-7 at 9-12, 14]

In advance of Redmond's July 2011 parole reconsideration hearing, numerous persons sent letters in support of his bid for parole. Letters were submitted by several BOP officials who knew Redmond through his participation in various work, training, and rehabilitation programs. Those letters consistently described Redmond as positive, diligent, cooperative, enthusiastic, hard-working, and respectful. [R. 1-6 at 53, 55, 57, 59, 61, 63] Redmond also submitted a letter from a friend of the family and business owner who indicated his willingness and ability to provide Redmond with both a job and a place to live upon his release from prison. [R. 1-6 at 65-66] In addition, several friends and family members who maintained contact with Redmond while he was in prison wrote letters expressing their belief in his ability to be a lawful and productive member of society upon release and support for his parole. [R. 1-7 at 2-3, 5]

At the July 28, 2011, parole hearing, Redmond was represented by counsel. Redmond presented the testimony of a counselor regarding his six-month participation in group Moral Reconation Therapy ("MRT")[1] sessions used to address criminal thinking, domestic violence

---

[1] Documents created by the Commission and the BOP sometimes incorrectly identify this therapeutic **approach as "Moral Recognition Therapy."** *Cf*. [R. 1-6 at 48, 50] Notwithstanding **its mislabeling, this is** the Moral Reconation Therapy described by Redmond's BOP therapist.

3

and anger management. The therapist further explained that treatment programs specifically directed at sex offenders were not available at the Pennsylvania facility where Redmond was incarcerated. In light of Redmond's participation in rehabilitative and other programming, the hearing examiner awarded Redmond one point for program achievement, resulting in a TPS of one. While the hearing examiner's Hearing Summary gave contradictory indications whether she recommended parole for Redmond,[2] a completed form made clear that granting parole was her recommendation. [R. 1-6 at 47-49; R. 1-7 at 19]

Notwithstanding the hearing examiner's recommendation, on November 10, 2011, the executive reviewer expressed a contrary opinion and recommended that parole be denied, based primarily upon Redmond's persistent denial that he had raped the victim and concomitant failure to accept responsibility for his crime. [R. 1-6 at 50-51] In its November 23, 2011, Notice of Action, the Commission adopted that recommendation, denied parole, and set a reconsideration hearing for July 2014. Further consistent with the executive reviewer's recommendation, the Commission strongly indicated that Redmond should participate in the BOP's comprehensive sex offender treatment program before his next reconsideration hearing. [R. 1-7 at 16-17] Redmond again informally sought reconsideration without success. [R. 1-7 at 21-34]

After Redmond was transferred from the penitentiary in Pennsylvania to USP – McCreary in Kentucky, in 2013 Redmond asked prison staff whether the specific sex offender

---

[2] On the one hand, the hearing examiner stated that "[t]he offender's Grid Score of 1 suggest that parole should be granted. Based upon his satisfactory institutional adjustment and significant community resources, this examiner will be recommending that the offender be granted parole." In addition, in the highlighted section for her recommendation, the hearing examiner indicates "Parole effective 1/5/2012, after the service of 191 months." On the other hand, immediately following in a section titled "Guideline Use" is the statement "A decision above the guidelines is warranted because you are a more serious risk than indicated by the guidelines in that your original offense involved you targeting an extremely vulnerable victim (an elderly woman), who you raped and anally and orally sodomized." [R. 1-6 at 49] Such an explanation for a departure above the guidelines was neither necessary or appropriate if, as was the case, the hearing examiner was recommending parole consistent with Redmond's TPS of one.

4

treatment programs mentioned by the Commission or other programs like them were offered at the prison. Staff responded that such programs were not available at that prison. Staff psychologist James Erickson further noted that Redmond was ineligible to be transferred to a prison that **did** offer the precise sort of sex offender management programs (SOMP) or sex offender treatment programs (SOTP) indicated by the Commission because Redmond's presumptive parole date would arrive sooner than the 21-27 months the program rules conclusively assume it would take to transfer him to such an institution and complete the program.³ [R. 1-7 at 40-41] Redmond was thus effectively caught in a Catch-22, unable to obtain the sex offender programming insisted upon by the Commission at his current prison and unable to satisfy the criteria to warrant a transfer to a different prison that did offer such programming.

Three years later on July 30, 2014, another reconsideration hearing was held. During the 2014 hearing, Redmond explained that he had attended an anger management class and a MRT group, but that no program specific to sex offenders was available at the prisons where he was confined. [R. 1-7 at 67, 80-81] His counsel further explained that Redmond had participated in the MRT counseling group for nearly two years, and that the Commission was incorrect when it concluded that MRT was not a sexual offender course: "… the course adviser .. the people that created the course [stated] that it's not true that it's not a sexual offender course. It specifically says that it is for sexual offenses and it's also for anger management." [R. 1-7 at 70-71] Redmond maintained his innocence of the underlying offense. [R. 1-7 at 72]

---

³ Because Redmond was already presumptively eligible for parole under the Guidelines, it is likely the counselor considered his approaching reconsideration hearing in July 2014 to be the equivalent of his presumptive parole date for purposes of SOTP eligibility.

5

The hearing examiner concluded that Redmond's TPS was zero which, under the Guidelines, is the lowest possible score and ordinarily will result in the grant of parole. The examiner noted that Redmond had completed the 12-month MRT program which "addresses mental health issues, substance abuse, parenting, spiritual growth, anger management and sexual/domestic violence among other things." Redmond had also served for another year as a mentor to MRT participants. [R. 1-7 at 76, 89, 94-95] The examiner concluded that the MRT sessions qualified as the kind of sex offender treatment program identified in the prior Notice of Action and recommended granting parole effective April 6, 2015. [R. 1-7 at 36-37]

Nonetheless, the same executive reviewer who disagreed and recommended that Redmond be denied parole in 2011, again disagreed and recommended denial of parole following the 2014 hearing, based upon his continued belief that the MRT group attended by Redmond was not the same as the sex offender treatment program offered by the BOP at some institutions and that it "was inadequate to reduce the risk that you will continue to prey upon vulnerable victims." [R. 1-7 at 37-38] The Commission agreed in its August 8, 2014, Notice of Action "based on the extreme cruelty to your victim and the lack of programming to address the underlying cause of your criminal behavior." As to the former, the Commission repeated the same incorrect description of Redmond's offense conduct scribed *verbatim* from the executive reviewer's comments, stating that his conduct "involved the forcible vaginal rape as well as rectal and oral sodomy against a 74 year old woman." As to the latter, the Commission again recited the executive reviewer's belief that "the [MRT] Group that you completed in 2011 was inadequate to reduce the risk that you will continue to prey upon vulnerable victims," implicitly rejecting the BOP counselor's statement during the 2011 hearing that participant "deviant sexual practices were addressed in therapy" in the MRT group sessions, and notwithstanding the fact that SOMP and SOTP programming was not available at either prison where Redmond was confined. [R. 1-6 at 48] Finally, the

6

Commission concluded that Redmond's persistence in maintaining his innocence of the crimes for which he was convicted indicated a lack of rehabilitation, and denied parole. [R. 1-6 at 2-3]

Redmond asserts three grounds for relief in his petition. First, he argues that the Commission's action lacked a rational basis because the denial of parole was based upon his failure to attend a treatment program tailored specifically to sex offenders that was simply not available at either the federal penitentiary in Pennsylvania or at USP – McCreary where the BOP chose to confine him. [R. 1-4 at 14-17] Redmond's second claim is a passing argument that the Commission's incorrect statement that he was convicted of rectal and oral sodomy is the sort of factual error that may warrant habeas relief. [R. 1-4 at 17] Finally, Redmond contends that the Commission's ultimate conclusion that he was "a more serious risk than [his] point score indicates" and that "there is a reasonable probability that [he] will not obey the law if [he were] released at this time and that [his] release would endanger the public safety"[4] lacked a rational basis in light of his consistent and positive efforts at rehabilitation in prison, evidenced by numerous letters of support from BOP staff and family, program achievement awards, and his near-spotless disciplinary record in prison. [R. 1-4 at 17-21]

## DISCUSSION

The Court conducts an initial review of habeas corpus petitions. 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). A petition will be denied "if it plainly appears from the petition and any attached exhibits that the

---

[4] These conclusions closely track the language of 28 C.F.R. § 2.73(a), which provides that the Commission has the discretion to grant a prisoner parole if "(1) the prisoner has substantially observed the rules of the institution; (2) there is a reasonable probability that the prisoner will live and remain at liberty without violating the law; and (3) in the opinion of the Commission, the prisoner's release is not incompatible with the welfare of society."

7

petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). At this stage of the proceedings, the Court accepts the petitioner's factual allegations as true and construes all legal claims in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Because he is a District of Columbia Code offender whose offense conduct was committed on February 6, 1996 – a date after March 3, 1985 and before August 5, 1998 – and satisfies certain other requirements, the suitability criteria applicable to Redmond's application for parole are governed by the D. C. Board of Parole's 1987 Guidelines as supplemented by the Commission's 1995 Policy statement (the "Guidelines"). 28 C.F.R. § 2.80(o)(2); *Skinner v. Hastings*, No. 7: 05-CV-370-DCR, 2006 WL 2457934, at *3 (E.D. Ky. Aug. 22, 2006).

Under the Guidelines, the Commission calculates the defendant's TPS, which reflects the risk of recidivism presented by the prisoner. At the first parole hearing, if the TPS is zero to two points the prisoner is ordinarily granted parole, but parole is generally denied if TPS is three or more points. At subsequent rehearings, parole is generally granted if TPS is zero to three points. But if circumstances warrant, the Commission can depart from the Guideline recommendation at any hearing and may grant or deny parole. *Hawkins-Bey v. Oddo*, No. 14-2275-STA-CGC, 2016 WL 590246, at *3 (W.D. Tenn. Feb. 11, 2016) (citing *Ellis v. District of Columbia*, 84 F.3d 1413, 1415-17 (D.C. Cir. 1996)).

The Commission's decision whether to grant or deny parole is an action "committed to agency discretion" under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), and is thus insulated from judicial review. 18 U.S.C. §§ 4203(b)(3), 4218(d); *Farkas v. United States*, 744 F.2d 37, 39 (6th Cir. 1984) ("Congress intended to commit these substantive decisions to the unreviewable discretion of the Commission."). A federal court's review of a decision by the Parole Commission is therefore extremely limited: the reviewing court applies a "limited

8

abuse of discretion standard" which asks "only whether there is a rational basis" for the Commission's decision. *Lee v. Rios*, 360 F. App'x 625, 627-28 (6th Cir. 2010) (citing *Hackett v. United States Parole Comm'n*, 851 F.2d 127, 129-30 (6th Cir. 1987) (*per curiam*)); *Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F. 3d 229, 232 n.2 (6th Cir. 2006). The Court cannot second-guess the Commission's findings of fact or credibility determinations. However, it may consider whether the Commission's action violated constitutional protections or was inconsistent with its own regulations. *Hinson v. United States*, 205 F. 3d 1340, 1999 WL 1206871, at *1 (6th Cir. 1999) (citing *Farkas*, 744 F.2d at 39).

A. **Redmond's Inability to Participate in a Sex Offender Treatment Program.**

Redmond first contends that the Commission lacked a rational basis to deny parole based upon his failure to participate in a sex offender treatment program because no such program was available at the prisons where he was confined. [R. 1-4 at 14-17] In that situation, Redmond continues, he took the best alternative path by attending the MRT group therapy sessions - which addressed sexual and domestic violence - for one year, and then spent another year voluntarily serving as a mentor to other participants. [R. 1-6 at 47-49; R. 1-7 at 70-71]

While Redmond's voluntary efforts at rehabilitation are to be commended, they do not render wholly irrational the Commission's conclusion that they were not sufficient. Sex offender treatment programs "represent[] a sensible approach to reducing the serious danger that repeat sex offenders pose." *McKune v. Lile*, 536 U.S. 24, 48 (2002). It is therefore entirely permissible and appropriate for the Commission to consider whether an inmate has completed such a specific program as indicative of his rehabilitation. *Pleaze v. Klem*, 335 F. App'x 168, 171-72 (3d Cir. 2009). Redmond did present clear evidence that the MRT counseling he received addressed sexual and domestic violence. But that program also

9

covered a number of other topics, including criminal thinking and anger management. In addition, the behaviors of those inmates who may have previously engaged in the broader category of "sexual violence" is not necessarily coextensive with those who committed more severe acts resulting in convictions for sex offenses. The Commission could therefore rationally conclude that while the MRT counseling was helpful, it did not present the same kind of specific and focused counseling provided through the BOP's SOMP and SOTP programming, and hence did not provide Redmond with the same degree of rehabilitative programming necessary to effectively reduce the risk of recidivism.

Nor does the fact that such sex offender treatment programs were not available at the prisons where Redmond was confined entitle him to be treated similarly to those inmates who had completed such programming. The BOP must balance numerous factors to determine where to house a particular inmate, including the nature of his offenses, proximity to the inmate's home and family, his conduct in prison, conflicts with other inmates, facility populations and resources, and programming availability. 18 U.S.C. § 3621(b). While Redmond was not placed in a federal prison offering sex offender treatment programs, the BOP was not obligated to prioritize his facility designation to ensure such availability, and the Commission acted reasonably in considering the failure to complete such programming in its denial of parole. As one court aptly explained,

> The fact that a sex offender treatment program was unavailable at USP–Lewisburg does not preclude the Parole Commission from taking into consideration the fact that Petitioner had not completed such a program. The Parole Commission has neither the authority nor the obligation to assure that programs designed to improve the prospect of successful rehabilitation, and consequently safeguard the community, are provided by corrections authorities. It is the Parole Commission's responsibility to assess the risk posed by a parole applicant, and completion of an appropriate treatment program is rationally related to the assessment of that risk, regardless of the availability of appropriate programming where the inmate is housed. In this case, the Parole Commission was careful to note that its decision was based upon the undisputed fact that Petitioner had not participated in "Sex Offender Treatment or Counseling Program." The Parole Commission did not state that

>it was denying parole because Petitioner refused to participate in such programming. It ascribed no fault to Petitioner in this regard. But the undeniable fact that such treatment was not received by Petitioner afforded the Parole Commission a rational basis for concluding that he posed an unacceptable risk to the community.

*Turnage v. Bledsoe*, No. 3: 08-CV-1662, 2010 WL 3632699, at *6-7 (M.D. Penn. Sept. 9, 2010); see also *Greenwood v. English*, No. 5: 13-CV-193-RS-EMT, 2013 WL 6085131, at *2, 4 (N.D. Fla. Nov. 19, 2013) (denying petition challenging denial of parole based upon failure to complete sex offender treatment program notwithstanding claim that BOP's refusal to transfer inmate to institution offering such programming until Commission established presumptive parole date placed prisoner in "Catch-22").[5]

### 2. **Incorrect Statement of Redmond's Offense Conduct.**

Redmond's second claim is based upon the Commission's incorrect statement in its August 8, 2014, Notice of Action that his offense involved not only vaginal rape but also rectal and oral sodomy. [R. 1-6 at 2] There is no question that this statement, oft repeated by the Commission, is flatly incorrect because Redmond was acquitted of the latter two offenses. [R. 1-6 at 9-10] In a single paragraph, Redmond argues that the Commission's decision must be overturned because it was predicated upon "convictions that did not exist..." [R. 1-4 at 17]

This contention is squarely foreclosed by controlling precedent: the Sixth Circuit has expressly rejected the argument that the Commission's reliance upon inaccurate factual information is grounds for relief because "the Commission's factual findings on these points are necessary components of the Commission's ultimate decision to deny parole and are not

---

[5] In 2013, Redmond was considered ineligible for transfer to an institution offering sex offender treatment programs because his rehearing date was less than 21-27 months away. Redmond may be able to avoid this timing obstacle by seeking such a transfer immediately after his July 2017 parole rehearing if parole is again denied and a 36-month rehearing date set. Numerous federal institutions, including high security penitentiaries, offer these programs. BOP Program Statement 5324.10 (Feb. 15, 2013). Specific locations are provided in the Directory of Bureau of Prisons' National Programs (May 22, 2015) at pp. 19-20. See https://www.bop.gov/inmates/custody_and_care/docs/BOPNationalProgramCatalog.pdf (last visited on Aug. 5, 2016).

11

subject to review by this court." *Farkas*, 744 F. 2d at 38-39 (because substantive decision to grant parole is one "committed to agency discretion" under the APA, court may not disturb that decision based upon reliance upon alleged misinformation regarding underlying offense); *see also Hinson*, 1999 WL 1206871, at *1 (holding that claim that parole commission relied upon inaccurate information regarding role in offense was outside permissible scope of review under *Farkas*). This argument therefore fails to establish viable grounds for relief.[6]

3.  **Evidence to Provide a Rational Basis Supporting the Commission's Decision.**

Redmond's final argument is that he presented overwhelming evidence regarding his rehabilitation and programming in prison, support from prison staff and family alike, and clear conduct record in prison sufficient to conclusively undermine the Commission's conclusion that there was a reasonable chance that he would commit new crimes if released on parole. [R. 1-4 at 17-21]

This is a direct challenge to the correctness of the Commission's substantive determination to deny parole, a decision statutorily insulated from judicial review. The only question this Court may therefore ask is whether there is a rational basis for the Commission's decision. *Lee*, 360 F. App'x at 627-28. The Commission's decision accounted for the fact that Redmond had provided evidence of his program achievements and sustained efforts at rehabilitation, as well as strong community support upon his release. However, the Commission also noted that Redmond had not participated in programming specifically directed at issues facing sex offenders. And it further concluded that Redmond's persistent

---

[6] Nor does the record suggest that the Commission's error on this point was essential to its parole determination. The nature of the conduct improperly attributed to Redmond also constituted first degree sexual abuse under District of Columbia law, the same offense for which he was actually convicted, and the record is devoid of any suggestion that the Commission believed that he had committed sexual assault on more than one occasion. This does not excuse the Commission's error, but casts considerable doubt upon whether Redmond was actually prejudiced as a result of it.

denial that he had committed the offense for which he was convicted indicated that he had "failed to accept responsibility for [his] crimes which indicates to the Commission [he had] not fully rehabilitated." [R. 1-6 at 2]

While counsel explained at the parole hearings that Redmond's protestations of innocence were made in furtherance of his actual innocence motion pending in the Superior Court, that position will continue to present Redmond with difficult choices if he seeks sex offender treatment programs in furtherance of his quest for parole. Cf. *Ainsworth v. Stanley*, 317 F. 3d 1 (1st Cir. 2002) (state could deny parole to inmates who failed to complete sex offender program even though participation in program required inmates to admit their criminal conduct); *Thorpe v. Grillo*, 80 F. App'x 215, 219 (3d Cir. 2003) (same). Faced with a convicted sex offender who both continued to deny that he committed the rape which landed him in prison and who had not participated in a sex offender treatment program, the Commission had ample grounds to conclude that Redmond might offend again if released, even considering other information otherwise supportive of parole.

The Court therefore concludes that the petition fails to provide any sufficient basis to invalidate the Commission's substantive decision to deny parole. To the extent Redmond seeks in the alternative an earlier date for rehearing, when the Commission denies parole a rehearing is ordinarily set for twelve months later, but the Guidelines give the Commission the discretion to set a parole reconsideration date "it deems to be appropriate." *Hawkins-Bey*, 2016 WL 590246, at *5 (citing *White v. Hyman*, 647 A. 2d 1175, 1179 (D.C. 1994); *Hall v. Henderson*, 672 A.2d 1047, 1054 (D.C. 1996)); *Goodman v. Hurst*, 1995 WL 57415, at *2 (6th Cir. Feb. 10, 1995); *Smith v. Sepanek*, No. 14-55-ART, 2015 WL 5841937, at *3 (E.D. Ky. Oct. 5, 2015). The Court will therefore deny this request as well.

13

Accordingly, **IT IS ORDERED** that:

1. Jesse R. Redmond, Jr.'s petition for a writ of habeas corpus [R. 1] is **DENIED**.

2. The Court will enter an appropriate judgment.

3. This matter is **STRICKEN** from the active docket.

Dated August 12, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY